IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | 1:01-CR-170-1 |
| | ) | 1:00-CR-408-1 |
| ORLANDO CHARLES GRIPPER, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER REDUCING SENTENCE**

Catherine C. Eagles, District Judge.

The defendant Orlando Gripper is serving drug crime sentences totaling just over 31 years. He has been in custody since March 2001 and is presently serving his sentence on home detention pursuant to the CARES Act. Mr. Gripper asks the Court to reduce his sentence to time served under 18 U.S.C. § 3582(c)(1)(A) based on his health conditions, age, time served, and successful rehabilitation. Because Mr. Gripper has shown that extraordinary and compelling reasons warrant sentencing relief and the § 3553(a) factors support release, his motion for a sentence reduction to time served will be granted.

**I.    Facts**

  **A. Crimes of Conviction**

In March 2001, law enforcement in Greensboro watched Mr. Gripper and his co-defendant deliver cocaine to a confidential informant. Doc. 160 at ¶¶ 6–11.[1] Law enforcement immediately arrested Mr. Gripper; his co-defendant attempted to escape by

---

[1] The Court adopted the factual findings and guideline determinations in the presentence report. Doc. 134. All cites are to the docket in 01-CR-170 unless otherwise specified.

car with the cocaine. *Id.* at ¶ 11. The co-defendant crashed, abandoned the car, and ran away. *Id.* at ¶ 12. Officers searched the car and found, *inter alia*, 693.2 grams of cocaine hydrochloride, 2,001 grams of cocaine hydrochloride, 995.9 grams of cocaine base, and a loaded nine-millimeter semiautomatic pistol. *Id.* at ¶ 13.

### B. Case History

In August 2001, a federal grand jury returned a three-count superseding indictment against Mr. Gripper. Doc. 49. He was charged in Count One with conspiracy to distribute in excess of 50 grams of cocaine base and in excess of 500 grams of cocaine hydrochloride, in Count Two with possession with intent to distribute approximately 2,800 grams of cocaine hydrochloride, and in Count Three with possession with intent to distribute approximately 1,000 grams of cocaine base. *Id.*

Mr. Gripper pled guilty to Counts One and Two, Minute Entry 08/27/2001, and the government agreed to dismissal of Count Three. Doc. 75; *see* Doc. 162.[2] At sentencing in February 2002, Mr. Gripper's base offense level was 36 because of the drug amounts. Doc. 160 at ¶ 18. After an enhancement for possession of a firearm and reduction for acceptance of responsibility, his adjusted offense level was 38. *Id.* at ¶ 23. He was a career offender within the meaning of U.S.S.G. § 4B1.1, *id.* at ¶ 24, and while this did not affect his offense level, *id.*, it did raise his criminal history category to VI. *Id.*

---

[2] There is some confusion in the record as to the exact crimes of conviction, which is cleared up in defense counsel's brief at Doc. 162, adopted in essence by the order denying Mr. Gripper's motion based on § 404 of the First Step Act. Doc. 164.

2

at ¶ 38. The guideline range was 324 to 405 months in prison. *Id.* at ¶ 55. The Court sentenced him to 365 months and five years of supervised release. Doc. 75.

When Mr. Gripper was sentenced, the Court revoked his supervised release in another case, 00-CR-408, and he received a 46-month revocation sentence. Doc. 18 (00-CR-408 MDNC). The two sentences were to run consecutively, Doc. 75 at 2, for a total sentence of 407 months, one month shy of 34 years. He did not appeal. Going forward, all references are to the sentences imposed in 01-CR-170, unless otherwise specified.

In 2010, Mr. Gripper filed a motion for a sentence reduction pursuant to 18 U.S.C. § 3582(c)(2) based on retroactive guideline changes. Doc. 95. The motion was granted, and his sentence was reduced to 329 months; the reduction would have been larger but for the application of the career offender guideline. Doc. 101. Counting the 46-month revocation sentence, his total sentence was 375 months, or just over 31 years.

In 2014, Mr. Gripper filed his second § 3582(c)(2)(3) motion based on another retroactive guideline change. Doc. 104. The Court denied the motion, noting that Mr. Gripper's sentence "is based on his career offender status, not on the drug amount guidelines." Doc. 110; Doc. 107-1 at ¶ 38. Mr. Gripper appealed, Doc. 111, and the Fourth Circuit affirmed. Doc. 114.

In 2017, Mr. Gripper filed a motion to vacate pursuant to 28 U.S.C. § 2255. Doc. 116. The Court denied the motion, Doc. 125, and the appeal was dismissed. Docs. 129, 130. In 2019, Mr. Gripper filed a motion to reduce his sentence pursuant to § 404 of the First Step Act, Doc. 132, which was denied. Doc. 147. Two earlier motions for compassionate release, Docs. 144, 159, were denied. Docs. 158, 164.

3

Pursuant to the CARES Act, the BOP released Mr. Gripper to serve his sentence on home detention in August 2020. *See* Doc. 159 at ¶ 17; Doc. 169-1 at 1. He is still in the custody of the BOP.

In December 2021, Mr. Gripper filed the pending renewed motion for compassionate release. The pending motion is applicable to the sentences he is serving in 00-CR408 and 01-CR-170.[3] Briefing was ordered and is now complete.

### C. Criminal History

Mr. Gripper's criminal history did not begin until he was over 30 years old. Doc. 160 at ¶ 28. He then committed a series of drug crimes that escalated in seriousness.

In 1991, he was convicted of attempted unlawful delivery of just under 20 grams of cocaine in Washington state court. *Id.* at ¶ 29. In 1993, he was convicted in the Western District of Washington of possession with intent to distribute cocaine base for incidents involving over 450 grams of crack cocaine; he received a five-year sentence. *Id.* at ¶ 30. In 2000, sometime after his release from prison, his supervision was transferred to this district. *Id.* Soon thereafter and while on supervised release, he was convicted in North Carolina state court of misdemeanor assault on a female and served 75 days. *Id.* at 30–31. He then committed the instant drug crimes, involving larger amounts of cocaine and a firearm, leading to a long sentence.

---

[3] The Court ordered that the new sentence in 01-CR-170 run consecutively to the revocation sentence in 00-CR-408, *see* Doc. 75, so one would think the 46-month revocation sentence had long since been completed. But it appears BOP is calculating otherwise. *See* Doc. 168-2 at 3–5.

4

### D. Other Relevant Facts

Mr. Gripper is now 65 years old. Doc. 160 at 2. He has been in federal custody since March 2001, *id.* at 1, and his projected release date is December 2027. Doc. 168-2 at 4. He was incarcerated for almost twenty years before his release to home detention in August 2020. Doc. 160 at 1.

Mr. Gripper has multiple chronic health conditions, including morbid obesity, Type II diabetes, hypertension, hyperlipidemia, sleep apnea, and an enlarged prostate. *See* Doc. 169 at 11; Doc. 165-1 at 1. In August 2021, he had surgery to treat his enlarged prostate. Doc. 165-1 at 5. He has no history of substance abuse or significant mental health issues. Doc. 160 at ¶¶ 43–44.

While incarcerated, Mr. Gripper completed 300 hours of training in basic construction, Doc. 166-1, 300 hours of training in facility maintenance, Doc. 166-2, and more than 200 hours in other courses provided by the BOP. Doc. 166-3. Mr. Gripper also earned his certificate in paralegal studies, and his bachelor's degree and MBA with academic honors. Docs. 166-4, 166-5, 166-6.

Mr. Gripper also worked at a UNICOR factory and received "outstanding work reports from his supervisors." Doc. 160 at 25. While on home detention, Mr. Gripper has worked remotely for Allegency Group, LLC. Doc. 166 at 15; Doc. 166-7. He has received "positive reports on all aspects of his employment." Doc. 166-7. He also received his commercial driver's license and has been offered a job as an over-the-road driver at a trucking company. Doc. 165-1 at 20; Doc. 166-9.

5

In over twenty years of incarceration and detention, Mr. Gripper had only one disciplinary infraction, for use of drugs in 2005. Doc. 168-4 at 1. Numerous inmates who served time with Mr. Gripper wrote letters of support on his behalf, discussing his compassionate nature and his positive influence on them. Doc. 155 at 10–23, 25–29. Multiple family members and friends pledge support upon his release from BOP custody. Doc. 155 at 2–9, 24.

Mr. Gripper lives with his mother in High Point, North Carolina while serving his sentence on home detention. Doc. 166 at 14 n.6. He has not submitted a specific release plan, but it is clear he has one. He is living at a residence approved by the BOP and, when released on supervised release, he must notify probation before any change in residence. Doc. 75 at 3. He is also currently employed. Doc. 166-7. His case manager notes that Mr. Gripper's family "has been active in his reintegration" and that "[t]here is no evidence that would suggest that Mr. Gripper could not make a successful transition back into the community." Doc. 166-7 at 1.

## II. Compassionate Release

Courts do not have unfettered jurisdiction or discretion to modify criminal sentences. *United States v. Goodwyn*, 596 F.3d 233, 235–36 (4th Cir. 2010). A court may modify a sentence only when a provision in the Federal Rules of Criminal Procedure or a statute expressly permits it to do so. *See* 18 U.S.C. § 3582(c). Section 3582(c)(1)(A), often called the "compassionate release" provision, is one such statutory provision.

6

In order for a sentence reduction under § 3582(c)(1)(A) to be appropriate, the movant must satisfy the administrative exhaustion requirement, when invoked by the government. *See United States v. Muhammad*, 16 F.4th 126, 130 (4th Cir. 2021). The statute also requires that extraordinary and compelling reasons warrant such a reduction, that the reduction is consistent with applicable policy statements issued by the Sentencing Commission, and that the § 3553(a) sentencing factors support a reduction. *See United States v. McCoy*, 981 F.3d 271, 274–75 (4th Cir. 2020). The Sentencing Commission has not yet adopted any policy statement applicable to motions filed directly by defendants. *Id.* at 275. The Court considers the old policy statement applicable to motions brought by BOP as helpful but non-binding guidance. *See id.* at 282 n.7.

## III. Discussion

### A. Exhaustion

In August 2019, Mr. Gripper submitted a request for compassionate release, which the warden of FCC Petersburg denied. Doc. 168-3. The Court denied Mr. Gripper's first compassionate release motion, Doc. 144, because he did not exhaust his administrative remedies to appeal the warden's denial. Doc. 158 at 4. The Fourth Circuit has since held that a defendant is not required to exhaust his administrative remedies if he waits 30 days following a request to file a motion with the district court. *See Muhammad*, 16 F.4th at 131. As the government concedes, Doc. 168 at 5–6, Mr. Gripper has now satisfied the exhaustion requirement because more than 30 days have passed since he asked the warden to file a motion.

7

### B. Extraordinary and Compelling Reasons

As noted *supra*, the policy statement applicable to motions brought by the BOP is helpful but non-binding guidance as to what constitutes extraordinary and compelling reasons for a sentence reduction. *See McCoy*, 981 F.3d at 282 n.7. Under U.S.S.G. § 1.B1.13 cmt. 1(B), a defendant establishes extraordinary and compelling reasons if he "(i) is at least 65 years old, (ii) is experiencing a serious deterioration in physical or mental health because of the aging process, and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment." For compassionate release motions filed directly by defendants, courts agree that a defendant's age, health conditions, and time served are relevant considerations. *See United States v. Rinehults*, No. 06-CR-78, 2020 WL 6532826, at *3 (E.D. Va. Nov. 5, 2020) (discussing a defendant's age and health conditions in concert with other factors); *United States v. Ogundele*, No. 15-CR-277, 2021 WL 1541660, at *3–4 (D. Md. Apr. 20, 2021) (same); *United States v. Henriquez*, No. 15-CR-225, 2021 WL 5771543, at *5 (M.D.N.C. Dec. 6, 2021) (referencing length of time served in combination with other factors).

Mr. Gripper is 65 years old, Doc. 160 at 2, and has multiple chronic health conditions. He has developed several serious health issues, including morbid obesity, Type II diabetes, hypertension, hyperlipidemia, and sleep apnea, and he recently had surgery on his enlarged prostate. Doc. 169 at 11. He has been in federal custody since March 2001, Doc. 160 at 1, and has served over three-quarters of his substantial total sentence. Doc. 168-2 at 3. This is well over the applicable ten-year statutory minimum

8

sentences required by law at the time he was sentenced. *See* Doc. 160 at ¶ 54; *see also* Doc. 162.

Mr. Gripper has presented significant and uncontroverted evidence of rehabilitation. He completed two 300-hour job training programs in basic construction and facility maintenance and over 200 hours in other BOP courses. Docs. 166-1, 166-2. 166-3. He earned his certificate in paralegal studies, and his bachelor's degree and MBA with academic honors. Docs. 166-4, 166-5, 166-6. Mr. Gripper also worked during his time incarcerated, receiving "outstanding work reports from his supervisors." Doc. 160 at 25. His disciplinary record is excellent—in around twenty years of incarceration, he has received one disciplinary infraction and it occurred about 17 years ago. Doc. 168-4 at 1. Letters of support from multiple inmates who served time with Mr. Gripper describe him as a willing mentor, a resource to others, and a positive influence on younger inmates. *See* Doc. 155 at 10–23, 25–29.

Mr. Gripper has been on home detention since August 2020, with no evidence of any violations or problems. As the BOP recognizes, home detention is a "time of testing" in which an inmate has the opportunity "to assume increasing levels of personal responsibility." BOP Program Statement 7320.01 (Sept. 6, 1995) (updated and reissued Dec. 15, 2017). While on home detention, Mr. Gripper has worked remotely and has received "positive reports on all aspects of employment." Doc. 166-7; Doc. 166 at 15. His case manager reports that Mr. Gripper has followed all rules and regulations, has not had any disciplinary infractions, and has not tested positive for alcohol or prohibited

9

substances. Doc. 166-7; *see also* Doc. 169-2. She also notes that his family has been active in his reintegration to the community. Doc. 166-7.

If Mr. Gripper's sentence is reduced to time served, he will be on supervised release for five years. Doc. 75 at 3. The sentencing court imposed several conditions that will provide additional protection to the community, resources for Mr. Gripper's ongoing rehabilitation, and oversight of his activities. *Id.* at 3–4.

The combination of Mr. Gripper's age, health conditions, the length of time he has served, rehabilitation, success on home detention, and the oversight and support provided by supervised release, taken together, constitutes extraordinary and compelling reasons that warrant a sentence reduction to time served. The Court so finds.

### C. The § 3553(a) Factors

Even if the court finds extraordinary and compelling reasons warrant sentencing relief, the § 3553(a) factors must also support release. *See United States v. High*, 997 F.3d 181, 186 (4th Cir. 2021). These factors include "the nature and circumstances of the offense; the history and characteristics of the defendant . . . and the need for the sentence to provide just punishment, afford adequate deterrence, protect the public, and provide the defendant with . . . training, medical care, or other correctional treatment in the most effective manner." *Id.* (cleaned up).

Mr. Gripper's criminal history and the nature and circumstances of his crimes warranted and warrant a lengthy sentence. In his early and mid-30s, Mr. Gripper committed multiple crimes related to selling drugs, Doc. 160 at ¶¶ 29–30, including a federal conviction for possession with intent to distribute cocaine base. *Id.* at ¶ 30.

10

While on supervised release for his federal offense, Mr. Gripper was convicted of misdemeanor assault on a female and committed the crimes of conviction. *Id.* at ¶¶ 30–31; Doc. 18 (00-CR-408). Due to his criminal history, Mr. Gripper was a career offender within the meaning of U.S.S.G. § 4B1.1. Doc. 160 at ¶ 24.

The crimes of conviction are serious. They involved substantial amounts of drugs, Doc. 75 at 1, which even today carry mandatory minimum sentences. *See* 21 U.S.C. § 841(b)(1)(B). When he was arrested, law enforcement found a loaded handgun in the vehicle, in addition to large quantities of cocaine hydrochloride and cocaine base. Doc. 160 at ¶ 13. The sentencing court imposed a significant 365-month sentence for Mr. Gripper's crimes—in the middle of the applicable guideline range, not at the low end—in addition to a 46-month revocation sentence. Doc. 75.

While Mr. Gripper's criminal history and serious criminal conduct merited a lengthy sentence, at this point he has served one. He has been in federal custody for nearly 21 years. Doc. 160 at 1. This term of incarceration is long enough to provide adequate deterrence and just punishment, especially given his age and health problems.

As discussed *supra*, Mr. Gripper has made extraordinary efforts at rehabilitation. He has completed many educational courses, earned multiple degrees, has a positive disciplinary record, and has worked throughout his time incarcerated. *See Pepper v. United States*, 562 U.S. 476, 492 (2011) (noting post-sentencing conduct provides the most "up-to-date picture" of a defendant's "history and characteristics"). He has a supportive family and has excelled on home detention. Doc. 166-7. He did not begin his criminal conduct until he was over 30 years old, indicating that he was able to live a law-

11

abiding life as an adult. Data from the Sentencing Commission reflects that persons released after age 65 have a much lower risk of recidivism. *See The Effects of Aging on Recidivism Among Federal Offenders*, U.S. SENT'G COMM'N, https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2017/20171207_Recidivism-Age.pdf (last visited Feb. 23, 2022). Based on his rehabilitation and his demonstrated ability to succeed outside of prison, a longer sentence is not necessary to protect the public or provide further correctional treatment.

Mr. Gripper's situation is atypical because he is currently serving his sentence on home detention. As the parties point out, Doc. 170 at 4; Doc. 168 at 13, the Department of Justice recently revised its interpretation of the CARES Act to authorize continued home detention after the COVID-19 national emergency declaration expires. *Discretion to Continue the Home-Confinement Placements of Federal Prisoners After the COVID-19 Emergency*, 45 Op. O.L.C. ___, slip op. at *1, 15 (Dec. 21, 2021). In light of that, Mr. Gripper might be able to finish his sentence—somewhere between five-and-a-half and eleven more years, depending on good time credits, on home detention.[4]

But such a long period of home detention, which is subject to the BOP's discretion, is unnecessary on the facts here. Mr. Gripper has shown that extraordinary and compelling reasons warrant a sentence reduction, and the § 3553(a) factors support release. Home detention is still detention, and it imposes significant restrictions on an

---

[4] Mr. Gripper is presently scheduled for release from his current sentences on December 23, 2027. Doc. 168-2 at 4.

12

inmate's mobility and freedom. It can affect the ability to work and, in Mr. Gripper's case, to obtain the exercise he needs to reduce his health problems. Doc. 165-1 at 1.

A sentence reduction will not result in total freedom; Mr. Gripper will be on supervised release for five years. But it will allow him to move freely within the district for work, medical care, exercise, and other lawful purposes. And it will provide oversight of his conduct and a structured support system for his ongoing rehabilitation, which will protect the public. A longer sentence—even on home detention—is not necessary when considering the § 3553(a) factors.

## IV. Conclusion

Taken together, Mr. Gripper's age, health conditions, rehabilitation, success on home detention, supervised release, and the length of time he has served constitute extraordinary and compelling reasons that warrant a sentence reduction to time served. The § 3553(a) factors also support a sentence reduction based on those same facts.

It is **ORDERED** that Mr. Gripper's renewed motion for compassionate release, Doc. 166, is **GRANTED** and his sentence is **REDUCED** pursuant to 18 U.S.C. § 3582(c)(1)(A) to **TIME SERVED.** The terms and conditions of supervised release imposed in the original judgment, Doc. 75, remain in place. The Clerk shall provide a copy of this Order to the Bureau of Prisons.

This the 23rd day of February, 2022.

_____
UNITED STATES DISTRICT JUDGE